IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

METROMONT CORPORATION,

   Plaintiff,

    v.

SIRKO ASSOCIATES, INC., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2407-TWT

OPINION AND ORDER

This is a breach of contract and tort action. It is before the Court on Defendant Carolina Steel & Stone, Inc.'s ("Carolina Steel") Motion for Summary Judgment Against Plaintiff Metromont Corporation [Doc. 102], Defendants James M. Sirko and Sirko Associates, Inc.'s ("Sirko") Motion to Exclude Testimony of Mark Moore [Doc. 103], Sirko's Motion for Summary Judgment Against Metromont Corporation [Doc. 104], Sirko's Motion to Exclude Testimony of Dan Petruc-Naum [Doc. 105], Sirko's Motion for Summary Judgment Against Carolina Steel [Doc. 106], Sirko's Motion for Leave to File Amended Statement of Undisputed Material Facts and Amended Brief in Support of Motion for Summary Judgment Against Metromont Corporation [Doc. 120], Sirko's Motion for Leave to File Amended Statement of Undisputed Material Facts and Amended Brief in Support of Motion for Summary Judgment Against

Carolina Steel [Doc. 121], Carolina Steel's Motion for Oral Argument [Doc. 139], and Metromont's Motion for Extension of Time to Identify Another Expert Witness [Doc. 169]. For the reasons set forth below, the Court DENIES Sirko's Motion to Exclude Testimony of Mark Moore [Doc. 103], DENIES Sirko's Motion for Summary Judgment Against Metromont Corporation [Doc. 104], DENIES Sirko's Motion to Exclude Testimony of Dan Petruc-Naum [Doc. 105], DENIES Sirko's Motion for Summary Judgment Against Carolina Steel [Doc. 106], GRANTS Metromont's Motion for Extension of Time to Identify Another Expert Witness [Doc. 169], DENIES Sirko's Motion for Leave to File Amended Statement of Undisputed Material Facts and Amended Brief in Support of Motion for Summary Judgment Against Metromont Corporation [Doc. 120], DENIES Sirko's Motion for Leave to File Amended Statement of Undisputed Material Facts and Amended Brief in Support of Motion for Summary Judgment Against Carolina Steel [Doc. 121], DENIES as moot Carolina Steel's Motion for Summary Judgment Against Plaintiff Metromont Corporation [Doc. 102], and DENIES as moot Carolina Steel's Motion for Oral Argument [Doc. 139].

## I. Background

This case arises out of the partial collapse of a five story parking deck. Metromont entered into a written subcontract with Hardin Construction Company to

furnish and erect precast concrete components for the construction of the Centergy Parking Deck located on Fifth Street in Atlanta, Georgia. Metromont then entered into a contract with Sirko to design the parking deck, and entered into a contract with Carolina Steel to build the parking deck. Sirko completed its design of the parking deck on March 6, 2002. The construction of the parking deck was substantially completed on December 2, 2002.

The connection design for the spandrel beams at Level 5 of the parking deck was different than at any other level. The spandrel beams on Level 5 were connected with a metal flap called a "PSA strap." (Carolina Steel's Br. in Opp'n to Sirko's Mot. to Exclude, at Ex. A.) Most of the spandrel connections on Level 5 failed in the years after 2002. On June 29, 2009, the connections at spandrel 15 at Level 5 failed, causing Level 5 to collapse onto Level 4 and subsequently causing all lower floors of the parking deck to collapse. The parking deck collapse caused significant property damage. Carolina Steel argues that the spandrel connections failed because of Sirko's flawed design; Sirko argues that the spandrel connections failed because of Carolina Steel's flawed construction of its non-defective design.

Metromont filed the Complaint on July 22, 2011, against Defendants Sirko, James M. Sirko, and Carolina Steel [Doc. 1]. Carolina Steel answered the Complaint on July 29, 2011, and asserted a Cross-claim against Sirko and Counterclaim against

Metromont [Doc. 4]. Sirko answered the First Amended Complaint on August 22, 2011, and asserted a Cross-claim against Carolina Steel and Counterclaim against Metromont [Doc. 15]. On March 19, 2013, Metromont's claims against Carolina Steel were voluntarily dismissed without prejudice and Carolina Steel's counterclaims against Metromont were voluntarily dismissed without prejudice as a result of settlement [Doc. 172].

## II. Legal Standards

### A.   Daubert Standard

Federal Rule of Evidence 702 governs the admission of expert opinion testimony. Pursuant to that rule, before admitting expert testimony a court must consider: (1) whether the expert is competent to testify regarding the matters he intends to address; (2) whether the methodology used to reach his conclusions is sufficiently reliable; and (3) whether the testimony is relevant, in that it assists the jury to understand the evidence or determine a fact in issue. Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). Furthermore, "the Court must find that [the expert] used a valid methodology based on reliable data to reach his opinions." Clarke v. Schofield, 632 F. Supp. 2d 1350, 1360 (M.D. Ga. 2009) (emphasis added). If the expert predicates his testimony on an assumption that is belied by the evidence, the expert's testimony is properly excluded. Ferguson v.

Bombardier Services Corp., 244 Fed Appx. 944, 949 (11th Cir. 2007). The party offering the expert's testimony has the burden to prove it is admissible by a preponderance of the evidence. Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

### B. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III. Discussion

### A. Sirko's Motion to Exclude the Testimony of Dan Petruc-Naum

Mr. Petruc-Naum is qualified to render an expert opinion that Sirko was negligent in the design of the parking deck and that this negligence caused the parking

deck to collapse. Mr. Petruc-Naum is the vice president and principal-in-charge of Crosby Group, a structural engineering firm based in San Francisco. He has an undergraduate degree, a Master's Degree, and a Ph.D. in structural engineering. (Carolina Steel's Br. in Opp'n to Sirko's Mot. to Exclude, at Ex. C.) He has been a licensed professional engineer in the state of California since 1992, and has designed many buildings and parking garages over the last thirty years. (Id.) For example, he designed the San Francisco General Hospital parking garage, the Santa Clara County Convention Center parking garage retrofit, the Bay Area Rapid Transit parking garage in Pleasant Hill, California, and the Milpitas garage renovation and office addition in Milpitas, California. (Id.)

Sirko argues that the methodology used by Mr. Petruc-Naum is not sufficiently reliable, and that his expert testimony should therefore be excluded. Sirko argues that the opinions expressed in the June 25, 2012 Final Report are unreliable because they are not supported by tests or calculations, and that the September analysis is unreliable because the information used in the models was vastly different than the actual design used by Sirko.

In ruling on the admissibility of expert testimony, "[t]he focus must be 'solely' on the expert's 'principles and methodology, not on the conclusions that they generate.'" KW Plastics v. United States Can Co., 131 F. Supp. 2d 1289, 1292 (M.D.

Ala. 2001), quoting Daubert, 509 U.S. at 594-95. The Court's responsibility is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). "[F]lexibility is essential in assessing the reliability of expert testimony, and, as such 'the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.'" McGee v. Evenflo Co., Inc., No. 5:02-CV-259-4, 2003 WL 23350439, at *4 (M.D. Ga. Dec. 11, 2003), quoting Kumho, 526 U.S. at 142 (emphasis in original).

"[U]nlike the fields of 'laboratory or medical testing, which employ rigorous and replicable protocols, technical fields such as engineering often involve more idiosyncratic methods of design and testing.'" McGee, 2003 WL 23350439 at *4, quoting Milanowicz v. Raymond Corp., 148 F. Supp. 2d 525, 532 (D.N.J. 2001). "As a result, it is not unusual for a technical expert, such as an engineer, to state that his opinions are not based upon any specific method, but are based solely upon his general experience and knowledge after a review of the evidence." Id. However, "engineers routinely rely upon established principles of physics, material sciences, and industrial design and often utilize technologically sophisticated and carefully

calibrated testing methods and devices when arriving at their conclusions." <u>McGee</u>, 2003 WL 23350439, at *5 (internal quotations omitted). "As such, the accepted methodology, characterizing the practice of an expert in the field of engineering, simply does not involve guess work or even conjecture; rather, accepted methodology more often involves some inquiry into industry standards, practices, or publications and results in conclusions based upon concrete data, testing, measurements, or calculations." <u>Id.</u>

     Sirko argues that a methodology devoid of testing is unreliable. In this case, physical testing of the parking deck structure was impossible. The parking deck could not be reconstructed to the position it was in prior to the collapse for the purpose of testing. The expert's methodology in <u>McGee v. Even-Flo Co., Inc.</u>, No. 5:02-CV-259-4, 2003 WL 23350439 (M.D. Ga. Dec. 11, 2003), was found to be unreliable after he failed to conduct testing of any automobile of the same make and model that he claimed to be defectively designed in a products liability action. Mr. Petruc-Naum did not have the option to test another parking structure with the exact same specifications which had not yet been destroyed, so this case is easily distinguishable. <u>McCorvey v. Baxter Healthcare Corp.</u>, No. 99-1250-CIV, 2011 WL 36393134 (S.D. Fla. Sept. 30, 2011), <u>rev'd on other grounds by</u> <u>McCorvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253 (11th Cir. 2002), is similarly distinguishable as the plaintiff alleged that his

catheter was defectively designed, and the expert failed to test other catheters with the same design in a manner that produced data supporting his conclusion. McCorvey, 2011 WL 36393134, at *7. In this case, Mr. Petruc-Naum did conduct testing, albeit not physical testing. He computed the amount of load the PSA straps on Level 5 could handle and the amount of load to which they were subjected, and did computer testing of the same.

Mr. Petruc-Naum concluded that the spandrel beam connections on Level 5 failed because of traumatic "shearing" in which the weight of the building upon the beams caused the bolts on the PSA straps to snap in the middle. (Carolina Steel's Br. in Opp'n to Sirko's Mot. to Exclude, at Ex. B.) Mr. Petruc-Naum concluded that the PSA straps as designed by Sirko were inadequate to resist the weight loads which were put upon them and that therefore the design failed to meet the standard of care of an ordinarily prudent structural engineer. (Id. at Ex. C.) In short, there was more load in terms of pounds placed upon the connections at spandrel 15 than they could withstand. He found that on the beam where the collapse began, spandrel 15 at Level 5, the PSA straps were broken for several years. (Id. at Ex. A.)

Mr. Petruc-Naum extensively reviewed Sirko's design drawings, visited the parking deck shortly after the collapse and in a subsequent visit, and analyzed the failed connections in the parking deck to determine the cause of the collapse.

(Carolina Steel's Br. in Opp'n to Sirko's Mot. to Exclude, at Ex. C.) He also ran mathematical calculations concerning the torsional forces (both tensile and shear) placed on the spandrels. (Id.) Mr. Petruc-Naum added the weights of the spandrel beam itself, the three double T beams, the concrete poured on top of the planks, and the automobiles and people that would be in that portion of the parking deck. He determined that given this combined weight, the PSA straps chosen by Sirko would fail. He further stated that even if he revised the data according to Sirko's contentions, the PSA straps chosen by Sirko would still fail. If Mr. Petruc-Naum mistakenly overestimated the weight of the building materials and calculated them to be too high, this issue goes to the weight and credibility of the evidence, and not its admissibility. See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1345 (11th Cir. 2003) (holding that identifying alleged flaws in an expert's analysis that may impugn the accuracy of the results, even though based on generally reliable methods, "is precisely the role of cross-examination."); Cummings v. Standard Register Co., 265 F.3d 56, 65 (1st Cir. 2002) (holding that any shortcomings in the expert's calculations went to the weight of the testimony, not its admissibility). Mr. Petruc-Naum corroborated his analysis of Sirko's design with the use of a standard computer software for design and engineering, the SAP2000. (Petruc-Naum Aff. ¶¶ 16-17.) Using software widely used in similar situations in the expert's field is often a reliable

method for forming an opinion. Mr. Petruc-Naum's causation opinion is not based upon speculation. Cf. Nolley v. Greenlee Textron, Inc., No. 1:06-CV-228, 2007 WL 5369405 (N.D. Ga. Dec. 6, 2007) (finding that the expert "failed to provide any rational explanation for how he arrived at his particular conclusions regarding proximate causation."). Therefore, the Court denies Sirko's Motion to Exclude the Testimony of Mr. Petruc-Naum.

   B. Sirko's Motion to Exclude the Testimony of Mark Moore

Mark Moore is qualified to render an expert opinion that Sirko's negligence caused the parking deck to collapse. Mr. Moore is a professional engineer licensed in Georgia. He has a Bachelor's Degree in civil engineering, and a Master's Degree in engineering. He has over thirty years of experience in the field of structural engineering, during which he has often evaluated structural design problems. He has investigated other precast concrete parking deck failures, including a failed parking deck at Vanderbilt University. (Moore Decl. ¶ 6.)

Mr. Moore's methodology is sufficiently reliable. Mr. Moore visited the parking deck, studied the design records, and performed engineering calculations of the design. (Moore Decl. ¶ 10.) He observed that on Level 5, 21 of the 33 PSA strap connections had fractured at the threaded end of the PSA straps before June 29, 2009. (Moore Decl. ¶ 20.) Due to his observations and his knowledge and experience, Mr.

Moore concluded that excess shear force on the PSA straps caused the fractures. (Id.) Mr. Moore reviewed the design calculations produced by Sirko and the deposition testimony of Darren Adams, the Sirko employee who performed the design, and determined that Sirko did not take the shear forces on the Level 5 connections into consideration when designing the parking deck. (Moore Decl. ¶ 24.) Mr. Moore concluded that Sirko's failure to design the spandrel beam connections to account for shear forces in the PSA straps was negligent and caused the parking deck to collapse. Examining the design records, the parking deck and failed spandrel connections therein, and conducting a separate analysis of the forces placed on the connections and the forces that they could withstand, are reliable methods for determining the cause of the parking deck collapse. Therefore, the Court denies Sirko's Motion to Exclude the Testimony of Mark Moore.

    C.    <u>Metromont's Motion for Extension of Time to Identify Another Expert Witness</u>

Metromont's expert, Mark Moore, unexpectedly died on February 25, 2013. Metromont has stated that Mr. Moore's deposition testimony is not suitable for use at trial. Metromont should not be disadvantaged by the death of its expert. Furthermore, as the Court has denied Sirko's Motion to Exclude Mr. Moore's Testimony, Sirko no longer objects to Metromont's Motion. (Sirko's Br. in Opp'n to Metromont's Mot. for Ext. of Time, at 5.) The Court grants Metromont's Motion for

Extension of Time to Identify Another Expert Witness.

      D.     <u>Sirko's Motion for Summary Judgment Against Carolina Steel</u>

Sirko's Motion for Summary Judgment against Carolina Steel is wholly dependent on this Court excluding the expert testimony of Mr. Petruc-Naum and Mr. Moore. The Court has denied Sirko's Motion to Exclude Mr. Petruc-Naum's Testimony and thus there is evidence of negligent design by Sirko.

      E.     <u>Sirko's Motion for Summary Judgment Against Metromont</u>

Sirko's Motion for Summary Judgment against Metromont is also wholly dependent on this Court excluding the expert testimony of Mr. Petruc-Naum and Mr. Moore. The Court has denied Sirko's Motion to Exclude Mr. Petruc-Naum's Testimony and thus there is evidence of negligent design and breach of contract by Sirko.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Court DENIES Sirko's Motion to Exclude Testimony of Mark Moore [Doc. 103], DENIES Sirko's Motion for Summary Judgment Against Metromont Corporation [Doc. 104], DENIES Sirko's Motion to Exclude Testimony of Dan Petruc-Naum [Doc. 105], DENIES Sirko's Motion for Summary Judgment Against Carolina Steel [Doc. 106], GRANTS Metromont's Motion for Extension of Time to Identify Another Expert Witness [Doc. 169],

DENIES Sirko's Motion for Leave to File Amended Statement of Undisputed Material Facts and Amended Brief in Support of Motion for Summary Judgment Against Metromont Corporation [Doc. 120], DENIES Sirko's Motion for Leave to File Amended Statement of Undisputed Material Facts and Amended Brief in Support of Motion for Summary Judgment Against Carolina Steel [Doc. 121], DENIES as moot Carolina Steel's Motion for Summary Judgment Against Metromont Corporation [Doc. 102], and DENIES as moot Carolina Steel's Motion for Oral Argument [Doc. 139].

SO ORDERED, this 23 day of May, 2013.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge