IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

METROMONT CORPORATION,

   Plaintiff,

   v.

SIRKO ASSOCIATES, INC., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2407-TWT

OPINION AND ORDER

Cross-Claimant Carolina Steel & Stone, Inc. ("Carolina Steel") moves for partial summary judgment against Cross-Defendant Sirko Associates, Inc. ("Sirko") on the basis that it is entitled to contractual indemnity from Sirko. Carolina Steel relies on a contract between Sirko and subcontractor Metromont Corporation, in which Sirko agreed to indemnify Metromont and its agents from claims based at least in part upon the negligence of Sirko. The parties agree that as of now Carolina Steel has not proved that Sirko was negligent. Carolina Steel argues that it is Metromont's agent as contemplated by the contract and South Carolina law. The Court holds that a genuine issue of material fact remains as to whether Carolina Steel was Metromont's agent for the construction of the parking deck at issue here.

I. Background

This case arises out of the partial collapse of a five story parking deck. Metromont entered into a written subcontract with Hardin Construction Company to furnish and erect precast concrete components for the construction of the Centergy Parking Deck located on Fifth Street in Atlanta, Georgia. Metromont then entered into a contract with Sirko to design the parking deck ("Metromont-Sirko Contract"), and entered into a contract with Carolina Steel to build the parking deck ("Metromont-Carolina Steel Contract"). Clause 9 of the Metromont-Sirko Contract states:

> 9. Indemnification. To the fullest extent permitted by law, the Engineer [Sirko Associates, Inc.] shall indemnify and hold harmless Metromont, its agents and employees, officers, directors and shareholders, from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of, resulting from, or occurring in connection with the negligent acts, errors or omissions of Engineer, its subcontractors, agents, employees, consultants or anyone for whom it is legally liable, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder.

Carolina Steel argues that when it built the parking deck it acted as Metromont's agent and thus is entitled to contractual indemnification from Sirko pursuant to Clause 9 of the Metromont-Sirko Contract in the event that a jury finds that Sirko's negligence contributed to the parking deck collapse, even if Carolina Steel is found to have been more negligent than Sirko.

II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III.  Discussion

#### A.  Choice-of-Law

The Metromont-Sirko Contract provides that it shall be construed in accordance with South Carolina law except for applicable principles of the conflicts of laws. (Metromont-Sirko Contract ¶ 9.)  Carolina Steel and Sirko agree that South Carolina law applies to the interpretation of this contract, including the specific issue of whether Carolina Steel was Metromont's agent as used in Clause 9. (Carolina Steel's Br. in Supp. of Carolina Steel's Mot. for Part. Summ. J., at 6-7; Sirko's Br. in Opp'n to Carolina Steel's Mot. for Part. Summ. J., at 19-20.)

B.      Agency

Carolina Steel argues that it was Metromont's agent, or in the alternative, an independent contractor that was legally the agent of Metromont for the erection of the parking deck.[1]  Sirko argues that Carolina Steel was not an agent of Metromont but rather an independent contractor not covered by the indemnification provision of the Metromont-Sirko Contract.  (Sirko's Br. in Opp'n to Carolina Steel's Mot. for Part. Summ. J., at 3.)  The Court sees no evidence that Metromont declared Carolina Steel to be its agent, or that Carolina Steel represented itself as Metromont's agent with Metromont's knowledge.  See Hiott v. Guaranty Nat. Ins. Co., 329 S.C. 522, 530 (Ct. App. 1997).  Under South Carolina law, if Carolina Steel were an independent contractor, Metromont as its employer would not be liable for Carolina Steel's negligence unless Metromont retained the right to control the manner in which Carolina Steel performed its work or the work involved an inherently dangerous activity.  Evergreen Intern., S.A. v. Marinex Const. Co., Inc., 477 F. Supp. 2d 690, 694-696 (D.S.C. 2007).  The standard for the level of control necessary for an agency relationship is:

---

[1] Carolina Steel previously admitted that it was an "independent contractor." (Carolina Steel's Answer, Counterclaim and Cross-Claim ¶ 43) ("[Carolina Steel] was the agent of Metromont because it was retained by Metromont by a subcontract as an independent contractor to erect the parking deck.").

> It is not enough that [Metromont] has merely a general right to order the work stopped or resumed, to inspect the progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that [Carolina Steel] is controlled as to [its] methods of work, or as to operative detail. *There must be such a retention of right of supervision that [Carolina Steel] is not entirely free to do the work in [its] own way.*

Id. at 696 (emphasis in original).

Metromont disputes many of Carolina Steel's allegations regarding the level of control and oversight that Metromont exercised over Carolina Steel's work. (See Metromont's Br. in Resp. to Carolina Steel's Mot. for Part. Summ. J.)  Metromont denies Carolina Steel's assertion that Metromont exercised near complete control over the erection of the parking deck.  Carolina Steel was required by its contract with Metromont to provide supervision for its workers, maintain erection tolerances, maintain safety measures, check foundations, and adhere to erection sequence and schedule.  Metromont was not on the jobsite directing Carolina Steel's day-to-day erection of the parking deck.  (Metromont's Br. in Resp. to Carolina Steel's Mot. for Part. Summ. J., at 5.)  Mr. Herrin, a senior project manager for Metromont, was at the project site for approximately five hours per week.  (Herrin Dep. at 22-23.)  He attended weekly meetings and was responsible for making sure that the job was progressing on schedule, but did not approve Carolina Steel's work.  (Herrin Dep. at 27, 83, 87-88.)

The Metromont-Carolina Steel Contract provides some support for Carolina Steel's contention that Metromont retained control over its work. Carolina Steel had to grout and weld on a Metromont-specified timing schedule. (Metromont-Carolina Steel Contract at ¶¶ 7-8.) Yet, Carolina Steel apparently still had discretion to deviate from the schedule when "required structurally as part of a connection." (Id.) Furthermore, the Court is not presented with evidence that Metromont monitored the quality of Carolina Steel's work or ordered modifications to the work. Keith Whitworth, the jobsite superintendent for Carolina Steel during construction, stated that Mr. Herrin of Metromont told him that they "needed to use" specific bolts. (Whitworth Dep. at 64-65.) Carolina Steel provides no other evidence of close supervision by Metromont.

Metromont agrees that it was responsible to others, including Hardin, for Carolina Steel's work. (Metromont's Br. in Resp. to Carolina Steel's Mot. for Part. Summ. J., at 3-4.) However, the Metromont-Carolina Steel Contract contains no language stating that Carolina Steel was Metromont's agent, and Subsection 19 of the Metromont-Carolina Steel Contract states, "Erector [Carolina Steel] is responsible for any damages to other trades or property caused by his crew or himself." (Sirko's Br. in Opp'n to Carolina Steel's Mot. for Part. Summ. J., at 19.) There is a genuine issue of material fact regarding whether an agency relationship existed between Metromont

and Carolina Steel.

## IV.  Conclusion

For the reasons set forth above, the Court DENIES Carolina Steel's Motion for Partial Summary Judgment Based on Contractual Indemnity [Doc. 101].

SO ORDERED, this 3 day of June, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge